IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Romona R. B., ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 3:23-cv-50183 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Martin O'Malley, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Romona R. B. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying her applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

In July 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning on April 12, 2019[2] because of back pain. R. 16; R. 111. Plaintiff was 50 years old on her alleged onset date.

Following a hearing, an administrative law judge ("ALJ") issued a decision in September 2022, finding that Plaintiff was not disabled. R. 15–27. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease in the cervical spine with history of discectomy and fusion; degenerative disc disease in the lumbar spine, status-post laminectomy; medial facetectomy and foraminotomies; and asthma. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. The ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 28.
[2] Plaintiff amended her alleged onset date from April 9 to April 12, 2019 because she previously received an unfavorable decision on April 11, 2019 finding her not disabled, and she was not seeking to reopen her prior applications. R. 16.

1

other jobs that existed in significant numbers in the national economy that she could perform, namely light, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on March 17, 2023, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); s*ee also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## III. Discussion

Plaintiff argues that a remand is appropriate because: (1) the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence and violated Social Security Ruling 96-8p; and (2) the ALJ's evaluation of Plaintiff's subjective symptoms was not supported by substantial evidence and violated Social Security Ruling 16-3p.

### A. RFC

Plaintiff argues that the ALJ failed to articulate the reasoning behind his RFC determinations as required by Social Security Ruling 96-8p. Specifically, Plaintiff argues that the ALJ: (1) arbitrarily and independently came up with the four-hour stand and/or walk limitation; (2) failed to include Plaintiff's need to use a cane; (3) improperly relied on evidence noting Plaintiff's occasional exercise; and (4) should have been "specific as to the frequency of [Plaintiff's] need to alternate sitting and standing." Pl.'s Br. at 8, Dkt. 15. Accordingly, Plaintiff argues that a remand

2

is required because "the ALJ's decision lacks the required analysis or the narrative statement on how he arrived at his [RFC] conclusions." *Id.* at 10.

Before addressing each of Plaintiff's arguments, this Court notes at the outset that Plaintiff's arguments in support of remand are generally conclusory and rely largely on Plaintiff's subjective complaints, which the ALJ discounted as inconsistent with the evidence in the record. Plaintiff takes issue with the ALJ's RFC determination, but the record reveals no medical source that opined to limitations greater than those adopted by the ALJ. This is critical because the Seventh Circuit has stated that "when no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (unpublished) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *Gedatus*, 994 F.3d at 904 (finding the fact that no doctor offered any opinion setting sitting limits greater than those set by the ALJ a "fundamental problem"); *see also Hosea M. v. Saul*, No. 18 CV 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) ("[C]ourts within this Circuit have repeatedly held that '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'") (collecting cases). For the reasons discussed below, Plaintiff's arguments do not warrant a remand.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

**1. Stand and/or Walk for Four Hours**

Plaintiff begins by arguing that the ALJ "independently derived" the four-hour standing and/or walking limitation with no logical explanation. Pl.'s Br. at 6, Dkt. 15. The state agency reviewing physicians, the only medical opinions that opined on Plaintiff's functional limitations relating to her back impairment, opined that Plaintiff was limited to six hours of standing and/or walking. R. 114, 129. In contrast, Plaintiff testified that she was only able to stand 15 to 20 minutes and could walk about 5 minutes without a cane before she started to feel radiating pain into her hips. R. 48–49. Plaintiff also testified that she would constantly change positions between standing and sitting to ease her pain. R. 49. The ALJ ultimately determined that Plaintiff could perform light work, but that Plaintiff could only "stand and/or walk for four hours in an eight-hour workday." R. 20. In formulating the RFC, the ALJ found the state agency physicians' opinions partially persuasive, noting that although Plaintiff exhibited decreased range of motion on examination due to pain, Plaintiff also reported occasionally exercising and walking with no restrictions. R. 24. Accordingly, the ALJ adopted most of the limitations assessed by the state agency physicians but found that the evidence supported greater restrictions, including a four-hour limitation to standing and walking and restricting some of Plaintiff's postural limitations to occasional instead of frequent.

Contrary to Plaintiff's argument, it was not improper for the ALJ to have rendered an RFC determination that was more restrictive from that which the state agency physicians recommended. To make an RFC determination, the ALJ must consider "*all* of the relevant evidence" and was not required to "rely entirely on a particular physician's opinion." Social Security Ruling 96-8p, 1996 WL 374184, at *2; *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). It is up to the ALJ to weigh conflicting evidence and provide a reasonable explanation for his conclusion. This is precisely what the ALJ did here. The ALJ's decision to limit Plaintiff to standing and/or walking for four hours was appropriately based on Plaintiff's statements, her medical records, and the only medical opinions in the record regarding Plaintiff's functional limitations. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (stating that the ALJ's "careful consideration" of the evidence was "shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians ... based on his independent review of the full evidentiary record"); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (stating that an ALJ's RFC finding that "was more limiting than that of any state agency doctor or psychologist" illustrated "reasoned consideration given to the evidence [the claimant] presented").

**2. Cane**

Plaintiff next argues that the ALJ erred in failing to include her need for a cane in the RFC. In support, Plaintiff argues that her use of a cane is well documented in the record, noting that her treating physician prescribed her a cane in December 2021, and she testified that she used a cane for walking and balance. R. 45, 49, 53–54.

Here, the ALJ specifically drew attention to his decision not to include the use of a cane in the RFC determination. The ALJ found:

> The use of a cane is not included in the residual functional capacity, since the claimant was prescribed the assistive device in December 2021, which is less than one year ago. In addition, upon her consultative exam, the claimant was able to walk 40 feet without the cane, could get on and off the exam table on her own and unassisted (C12F/2); and in January 2022, she acknowledged being capable of exercising, and walking without restrictions (C15F/5). Nevertheless, the vocational expert indicated that the jobs mentioned below will remain available to be performed by the claimant even if she requires a cane for ambulation (Hearing recording).

R. 20 n.3. The ALJ also cited to several records revealing that Plaintiff maintained the ability to independently ambulate and had a normal gait and normal strength in her extremities. R. 20 (citing R. 1747, 1757, 1766, 1823, 1846, 1912, 1923).

Plaintiff acknowledges that any error the ALJ made in failing to include her use of a cane for ambulation would be harmless because the vocation expert testified that the jobs identified would remain despite this limitation. Accordingly, Plaintiff focuses on her need to use a cane for balance, which the vocational expert testified would eliminate the jobs identified. R. 60. Plaintiff argues that the ALJ failed to consider the parts of the consultative examination that "clearly suggest that [Plaintiff] not only required a cane for ambulation, but also for balance and other postural

4

functions." Pl.'s Br. at 7, Dkt. 15. Plaintiff points out that, although she was able to walk 40 feet without a cane, the ALJ failed to mention the consultative examiner's finding that Plaintiff's "gait is slow and broad based, leaning on the cane" and that Plaintiff used support when walking on heels and toes and squatting. Pl.'s Br. at 6, Dkt. 15 (citing R. 1823).

However, in addressing Plaintiff's back issues later in the RFC analysis, the ALJ specifically addressed the evidence Plaintiff identifies. The ALJ acknowledged that in November 2021, Plaintiff reported balance problems and was prescribed a cane in December 2021. R. 22–23. The ALJ then went on to discuss the consultative examiner's findings:

> Within the same month, upon her consultative exam, she acknowledged being able to perform personal hygiene, bathe and change clothes on her own. She could also drive and feed herself (C12F/1). Her gait was slow, broad based, and she leaned on the cane. However, she could walk 40 feet without the assistive device; and could walk on heels and toes slowly, and squat leaning on the table for support. She could get on and off the examination table, and dress and undress without assistance. Her grip was 5/5 bilaterally, she could make a fist, and could pick up objects like a paper clip and a coin. She could open and close the door, oppose the thumb to fingers, and flip pages. In addition, strength was normal in all extremities, reflexes were 2+, and no sensory deficits were present (C12F/2), although displaying reduced range of motion in the cervical spine, shoulders, lumbar spine, hips, and knees (C12F/5-7).

R. 23. The ALJ specifically considered the evidence Plaintiff points to but chose to give more weight to Plaintiff's ability to walk without the cane and get on and off the exam table than to her leaning on the cane and using support when squatting and heel-toe walking.

As the Commissioner correctly points out, Plaintiff's argument that the record "clearly suggests" something different than the ALJ decided based on a review of the same record invites this Court to reweigh the evidence, which this Court cannot do. Def.'s Mot. at 7, Dkt. 20 (citing *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002)). Rather, this Court only looks to whether the ALJ's decision is supported by substantial evidence. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Here, the ALJ properly weighed the conflicting evidence and sufficiently supported his finding that a cane was not necessary for ambulation or balance. As such, the ALJ did not err by failing to include the need for a cane in the RFC.

### 3. Occasional Exercise

Plaintiff also argues that the ALJ erred in relying on reports in the record that Plaintiff occasionally exercised because it amounted to "a patent form of overly nitpicking the record in order to deny benefits." Pl.'s Br. at 7, Dkt. 15. Plaintiff does not dispute that she reported occasionally exercising. She argues only that the record does not identify what form or degree of exercise Plaintiff could perform. The record that Plaintiff takes issue with is a January 2022 treatment record from her treating physician, who reported in the social history questionnaire that Plaintiff's level of exercise was occasional, she was able to care for herself, and she could walk

without restrictions. R. 1846. As Plaintiff points out, that treatment note also reported that Plaintiff continued to report pain in her legs and back and had a reduced range of motion. R. 1847.

Nonetheless, the ALJ specifically acknowledged this evidence in his decision when relying on this treatment note. This is not a case where the ALJ ignored an entire line of evidence contrary to his decision. Instead, the ALJ discounted Plaintiff's reports of pain in light of contemporaneous reports of no edema or weakness in her lower extremities, along with Plaintiff's continued ability to exercise occasionally, care for herself, and walk without restrictions. R. 23 (citing R. 1846–47). The ALJ relied on similar treatment records from July and October 2021, which reported Plaintiff's occasional exercise and no weakness in her extremities. R. 22 (citing R. 1793, 1800). The state agency physicians similarly relied on these treatment notes when opining that Plaintiff could perform a less restrictive RFC than the one adopted by the ALJ. Accordingly, the ALJ appropriately weighed the conflicting evidence and found that Plaintiff's reports of disabling pain were inconsistent with the other evidence in the record. The ALJ's determination is supported by substantial evidence.

### 4. Sit/Stand Option

Finally, Plaintiff faults the ALJ for failing to include the frequency of Plaintiff's need to alternate between sitting and standing throughout the workday. Plaintiff relies on Social Security Ruling 96-9p, 1996 WL 374185, to argue that the ALJ was required to provide a specific sit/stand frequency determination in the RFC assessment. As the Commissioner points out, Social Security Ruling 96-9p only applies to claimants with an RFC of less than the full range of *sedentary* work. Therefore, Social Security Ruling 96-9p does not apply to this case.

Even applying the frequency requirement in Social Security Ruling 96-9p, the ruling begins by stating that "[a]n individual *may* need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically." Social Security Ruling 96-9p, 1996 WL 374185, at *7 (emphasis added). Accordingly, Plaintiff cites several cases requiring the ALJ to "specify a particular frequency" of alternating between sitting and standing. *See, e.g.*, Pl.'s Br. at 9, Dkt. 9 (citing *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (remanding where the "RFC provides that [the plaintiff] must be able to alternate between sitting and standing" but "does not specify a particular frequency"); *Lopez v. Astrue*, No. 10 cv 08024, 2012 WL 1030481, at *10 (N.D. Ill. Mar. 27, 2012) (requiring a frequency determination *when* the RFC includes a sit/stand option)). These cases only support the argument that a frequency determination is required when the ALJ finds that there is a need to alternate at all.

Here, the ALJ's RFC only limited Plaintiff to standing and/or walking for four hours. It did not include the requirement that Plaintiff be allowed to alternate between sitting and standing throughout the workday. The ALJ only needed to include limitations in the RFC that are supported by the record. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); *Outlaw v. Astrue*, 412 Fed. App'x 894, 898 (7th Cir. 2011) (unpublished) ("The ALJ needed only to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible."). The ALJ relied on evidence suggesting that Plaintiff's back problems were not as limiting as she alleged, and Plaintiff has not shown that the ALJ's reliance on this evidence was improper. Plaintiff also points to no medical opinion supporting a work-related limitation to

6

accommodate her need to alternate positions. As such, the ALJ did not err by failing to provide a specific sit/stand frequency determination in the RFC assessment.

**B. Subjective Symptoms**

Plaintiff also argues that the ALJ failed to support his decision to discount Plaintiff's subjective symptoms with substantial evidence as required by Social Security Ruling 16-3p.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); Social Security Ruling 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation. The ALJ discussed Plaintiff's testimony and complaints of disabling leg and back pain but found that the record indicated that her symptoms were not as disabling as alleged.

Nevertheless, Plaintiff faults the ALJ for relying too heavily on her activities of daily living to discount her symptoms because the ALJ failed to discuss how her "minor and trivial daily tasks were inconsistent with [her] subjective complaints of limited standing and walking along with chronic pain." Pl.'s Br. at 11, Dkt. 15. Plaintiff argues that activities such as playing computer games, working for DoorDash, driving, shopping for groceries, doing household chores, occasionally exercising, and going out alone "are the exact functioning one would expect a person who is considered disabled or limited to sedentary work to engage in." Pl.'s Br. at 11, Dkt. 15. But Plaintiff cites no authority to support that the ALJ's decision to discount the disabling effects of her leg and back pain based on these activities was patently wrong.

Activities of daily living are a necessary and proper factor for the ALJ to consider in a subjective symptom evaluation. 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as first relevant factor); *see Grotts*, 27 F.4th at 1279 (noting that activities of daily living are properly considered in subjective symptoms evaluation). Here, it was not unreasonable for the ALJ to conclude that Plaintiff ability to work part-time for DoorDash between April 2021 and June 2022, drive, shop, exercise, and do household chores, even where the ALJ specifically acknowledged Plaintiff's reported need for assistance such as sometimes using a motorized cart for shopping, taking breaks, and the assistance of her daughter, when performing many of these tasks, was inconsistent with Plaintiff's reports that she suffered from constant back pain, which she rated at a 9/10, could only stand for 15 to 20 minutes, walk for 5 minutes, and sit for 30 to 40 minutes. R. 43, 48-50. Moreover, despite Plaintiff's argument to the contrary, the ALJ did not equate Plaintiff's activities with "the ability to perform light work activities." Pl.'s Br. at 12, Dkt. 15. The ALJ simply used Plaintiff's activities to evaluate the severity of her alleged symptoms. Accordingly,

7

the ALJ's analysis of Plaintiff's activities of daily living was not patently wrong and does not warrant a remand.

Plaintiff goes on to argue that the ALJ improperly characterized her treatment as conservative. Plaintiff argues that the ALJ never acknowledged her difficulty obtaining physical therapy and stronger medications due to a lack of insurance approval and her inability to get appointments with a rheumatologist and a neurologist for further treatment. Plaintiff also argues that the ALJ was required to rely on expert opinion evidence to support his conclusion that Plaintiff's treatment was conservative, noting that the ALJ speculated that additional treatment was warranted.

The ALJ described Plaintiff's treatment as follows:

> In terms of treatment, she only takes ibuprofen for pain, and is waiting to get an appointment with a rheumatologist. She has not received physical therapy during the period considered herein. She noted improvement after her surgeries in 2017 and 2018, however, her conditions worsened again. She had an MRI done in 2022 but was not informed of the findings. She also uses heating pads, which helps her symptoms.

R. 21. The ALJ also referenced Plaintiff's referrals to see a rheumatologist in October 2021 and a neurologist in January 2022 due to her continued reports of pain, but Plaintiff never consulted with either specialist. R. 19 (citing 1868); R. 23 (citing 1848).

As a general matter, an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's subjective complaints. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). In this case, it was not improper for the ALJ to characterize Plaintiff's treatment as conservative without an expert opinion because the record revealed additional treatment that was recommended that Plaintiff had yet to pursue. Plaintiff was referred to both a rheumatologist and a neurologist due to her continued complains of pain. While it is true that an ALJ should consider possible reasons for lack of treatment before finding subjective symptoms inconsistent with the evidence, the ALJ properly sought out these reasons and took them into consideration. R. 21, 44. *See Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009) (finding that ALJ's cannot make their own inferences about the level of treatment without record support). At the hearing in August 2022, the ALJ asked Plaintiff about her referrals to a specialist. Plaintiff did not state that she was unable to get an appointment with a rheumatologist or a neurologist or even that she tried calling to get an appointment. Plaintiff stated only that she was waiting for the rheumatologist and neurologist to call her for an appointment. R. 44. Accordingly, the ALJ did not discount Plaintiff's allegations based on his own perceived need for additional treatment.

As it relates to Plaintiff's use of ibuprofen, although Plaintiff testified that her insurance did not pay for the medications she needs, she also stated that her treater does not prescribe the type of medication she needs. R. 44. Plaintiff cites to no record evidence indicating that a different medication was recommended or prescribed and denied by her insurance. Accordingly, the ALJ's finding that Plaintiff only takes ibuprofen for pain was an accurate assessment of the record.

As it relates to physical therapy, Plaintiff argues that the ALJ "never acknowledged that the Plaintiff reported difficulty obtaining physical therapy." Pl.'s Br. at 12, Dkt. 15. However, when asked about physical therapy at the hearing, Plaintiff explained that while she was in physical therapy before her 2017 back surgery, she had not been in physical therapy since 2019. R. 44. Plaintiff cites to no record evidence that physical therapy was recommended during the period at issue. Plaintiff cites only to records from 2013 where her insurance would not approve physical therapy. However, because there is no indication in the record that physical therapy was recommended for Plaintiff during the period at issue, this Court agrees with Plaintiff that the ALJ should not have used Plaintiff's lack of physical therapy to discount her symptoms. *See Myles*, 582 F.3d at 677–78. Nevertheless, the ALJ's erroneous consideration of Plaintiff's lack of physical therapy alone does not provide a basis to remand because, as outlined above, the ALJ provided other valid reasons for discounting Plaintiff's subjective symptoms as inconsistent with the medical and other evidence in the record. *See Halsell*, 357 F. App'x at 722 ("Not all of the ALJ's reasons must be valid as long as enough of them are.").

Finally, Plaintiff faults the ALJ for "only briefly mention[ing] [her] efforts to relieve pain with treatment modalities, such as heating pads and lying down." Pl.'s Br. at 13, Dkt. 15. Yet, Plaintiff does not argue that the ALJ ignored an entire line of evidence contrary to his ruling or failed to consider Plaintiff's attempts to relieve pain with heating pads and lying down. The ALJ properly made note of Plaintiff's alleged need to lie down and use of heating pads. R. 21. Instead, Plaintiff merely disagrees with the ALJ's weighing of the evidence in the record and his conclusion that Plaintiff's impairments did not warrant any limitations beyond the RFC that the ALJ assessed.

Again, not all the ALJ's reasons must be valid in a subjective symptom analysis, as long as enough of them are and here, enough of them are. The ALJ sufficiently evaluated Plaintiff's subjective symptoms related to her back impairments and included limitations supported by the record. *See* 20 C.F.R. § 404.1529(c)(4) (stating that the ALJ is empowered to determine whether a claimant's subjective complaints are supported by medical evidence and, if not, the ALJ may discount the claimed degree and severity of the alleged symptoms). Accordingly, the ALJ's subjective symptom analysis as a whole is not patently wrong, and thus, a remand is not warranted on this basis.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Date: September 18, 2024     By: *Margaret J. Schneider*
Margaret J. Schneider
United States Magistrate Judge